UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

vs                                                           Case No: 04-80372
                                                                 Honorable Victoria A. Roberts

D-4 - DENNIS JOHNSTON,

    Defendant.
_____/

**OPINION AND ORDER**

**I.  INTRODUCTION**

Dennis Johnston ("Defendant") comes before the Court to be sentenced for a violation of 2 U.S.C. §§ 441f and 437g(d).  He entered a guilty plea on November 15, 2007.

**II.  BACKGROUND**

In 2001 the State of Michigan charged James Hulet with criminal sexual conduct, delivery of cocaine, possession with intent to deliver cocaine, maintaining a drug house, possession of ecstasy, and possession of a firearm during commission of a felony.  He retained Defendant and Robert Leithauser as counsel.

On February 22, 2002, Defendant received a phone call from an attorney attempting to resolve a civil case related to Hulet's charged criminal conduct.  Based on comments made by the attorney, Defendant felt the attorney was leveraging his

1

financial support of Carl Marlinga, Macomb County Prosecutor, who was then running for the United States Congress, against Defendant's client. Defendant later contacted Marlinga, informed him of the phone call, and requested a meeting to present "his side" of the case.

Marlinga met with Defendant and Leithauser on February 28, 2002. According to the Government, after discussing the Hulet case, Marlinga told the attorneys that the case was now "on his radar."

At some point, Defendant received a check for $10,000 from James Hulet. The check was to make a campaign contribution to the congressional campaign of Carl Marlinga. To disguise the original source of the money, Defendant instructed his wife to convert it into five checks for $2,000. She made out five checks in the names of Defendant, herself, her two sons, and Leithauser, all payable to Carl Marlinga's campaign for the 10th Congressional District. Defendant turned in all five checks as a single donation at a Marlinga campaign fundraiser. According to the Government, the following day Leithauser had a meeting with Marlinga.

On June 25, 2002, Marlinga called Defendant and asked him for more money. Marlinga acknowledged that Defendant had contributed the maximum legal amount to the campaign, but asked him to contribute to the campaign committee for James Barcia (a state campaign). Marlinga explained that he would receive a reciprocal donation from Barcia's campaign.

The PreSentence Investigation Report ("PSIR") states that during the months of June and August 2002, Defendant made other contributions in the names of other individuals totaling $5,000. This is explained by the Government as $2,000 contributed

by Defendant to Marlinga for Congress, but in the name of Gwendolyn Leithauser; and $3,000 to the Friends of Jim Barcia (a state campaign).

In its Sentencing Memorandum, the Government increases this amount to $6,000, by arguing that after the Friends of Barcia realized that Marlinga (through Defendant) had only contributed $3,000 to Barcia, while Barcia gave $4,000 to the Marlinga campaign, Barcia representatives prevailed on Marlinga to make an additional $1,000 contribution to Barcia to even things out. The Government says this was done when Defendant contributed $1,000 to Friends of Barcia in the name of Gail Mancinelli, Defendant's sister. Ms. Mancinelli did not know Defendant made this contribution in her name.

Defendant contests application of the June and August contributions, his wife's 2001 contribution, and his own 2001 contribution. The Government's Sentencing Memorandum supports the $15,000 in contributions outlined in its version of the Rule 11 (adopted by Probation), the additional $1,000 as described above as a contribution in the name of Manicelli, and another $10,000 contribution to the Michigan Democratic Party.

In response to a request by the Court, both parties submitted supplemental sentencing memoranda providing the legal basis for their calculations of the contribution amount. The Government's supplemental memorandum retreats to holding Defendant responsible for only $16,000: the $15,000 described in the Rule 11 and the PSIR, and the additional $1,000 contributed in the name of Mancinelli.

Although Defendant estimates for purposes of the Rule 11 that his contribution is $6,000, he now accepts a contribution amount of $8,000.

3

## III.     ADVISORY GUIDELINES

### A.     Probation and Government Rule 11 Calculations

Defendant's base offense level is 8.   Probation holds Defendant responsible for $15,000 in donations in the name of another.  Pursuant to U.S.S.G. §§ 2C1.8, 2B1.1(b)(1), Probation increases Defendant's offense level by four points because he is held responsible for more than $10,000, but less than $30,000 in contributions.  After a two-point reduction for Defendant's acceptance of responsibility under § 3E1.1(a), Probation calculates Defendant's Offense Level as 10.  Defendant receives only a two point reduction under § 3E1.1(a) because his offense level is not high enough to qualify for a third point.

Defendant does not have a criminal history and is Criminal History Category I. Probation calculates a Guidelines range of 6-12 months.

### B.     Defendant's Rule 11 Calculations and Post Rule-11 Calculations

Defendant's Rule 11 calculations establish a Guidelines range of 0-6 months based on a contribution amount of $6,000 (three of the five $2,000 December 2001 checks submitted to the Marlinga campaign).

Defendant argues that even if Hulet gave $10,000 to him, Defendant contributed $2,000 of this in his own name.  Defendant also says the $2,000 contribution by his wife was "ratified" by her and, therefore, was not made by Defendant in the name of another. Defendant contends it is irrelevant that the money belonged to Hulet.

Defendant now takes responsibility for the $2,000 he contributed in the name of Mrs. Leithauser.

4

However, he strongly contests the Government's position that his contributions to the Barcia campaign were a violation of the federal statute. He points out that the Barcia campaign was a state campaign, and contributions to it do not violate 2 U.S.C. §§ 441f, 437g(d), which only limit contributions to federal campaigns.

**C.   Government's Post-Rule 11 Calculations**

In its Supplemental Sentencing Memorandum, the Government concedes that the $10,000 contribution to the Michigan Democratic Party is not a violation of 2 U.S.C. §§ 441f and 437g(d).

**D.   Court's Guideline Determination**

The Court finds that the Federal Election Campaign Act ("FECA"), 2 U.S.C. §§ 431-55, applies only to campaign contributions made to federal election campaigns. *Fieger v. Gonzales*, No. 07-10533, 2007 U.S. Dist. LEXIS 59636, at *4 (E.D. Mich. Aug. 15, 2007) (citing 2 U.S.C. §§ 432-434). The Government cites no authority establishing liability for contributions to a state campaign which subsequently transfers money to a federal campaign. The Court agrees with Defendant that he should not be held responsible under §§ 441f and 437g(d) for the $4,000 in contributions to the Barcia campaign; it was not a federal election campaign.

The Court also agrees with Defendant that he is not criminally liable for the $2000 he contributed in his own name. The Government says contributions in the name of another include the contribution made by Defendant in his own name to the Marlinga campaign with funds received from Hulet. However, the plain language of the statute does not support this construction. Although the Court accepts that more than

5

one person can make or cause a contribution in the name of another, the "other" must be somebody different than the person causing the contribution. Notwithstanding its original source, Defendant is not criminally liable for his own contribution.

The Court also notes the Department of Justice ("DOJ") Manual ("Manual") in effect when the contributions at issue were made, states there is a "practice of not prosecuting persons who are recruited to serve as conduits in order to disguise FECA violations." DOJ Federal Prosecution of Election Offenses 123 (6th ed. 1995). Defendant maintains it was Hulet who requested he make the contributions. If this characterization is accurate, Defendant's $2,000 contribution is arguably the result of "recruitment" by Hulet of Defendant as a conduit, in which case the DOJ's own Manual recommends no prosecution of persons situated as Defendant. And, Hulet has not been criminally charged. In any event, the Court concludes a contribution in one's own name is not made in the name of another.

Defendant concedes criminal liability for the following contributions:

(1)　$2,000 December 2001 contribution in the name of Kurt Johnston (Defendant's son) to the Marlinga campaign;

(2)　$2,000 December 2001 contribution in the name of Rod Johnston (Defendant's son) to the Marlinga campaign;

(3)　$2,000 December 2001 contribution in the name of Leithauser to the Marlinga campaign; and

(4)　$2,000 June 2002 in the name of Leithauser's wife to the Marlinga campaign.

The only unanswered question is whether Defendant correctly states his wife's

6

"ratification" of the contribution in her name to the Marlinga campaign allows him to escape liability under § 441f. The Court need not answer this question; if Defendant is held liable for his wife's contribution, his total contributions "in the name of" others still would not *exceed* $10,000. U.S.S.G. § 2B1.1(b)(1)(C) ("(C) *More than* $10,000 . . . add 4.") (emphasis added). For contributions totaling $8,000 or $10,000, Defendant's Offense Level is the same under §§ 2B1.1, 2C1.8.

After a two point increase under §§ 2B1.1, 2C1.8 from a base offense level of 8 to an offense level of 10, and a two-point reduction for Defendant's acceptance of responsibility, his offense level is 8. With zero criminal history points, Defendant's Criminal History Category is I.

Defendant's correctly calculated Guideline range is 0-6 months.

**IT IS ORDERED**.

        /s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: June 20, 2008

| |
|---|
| The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on June 20, 2008. |
| s/Linda Vertriest |
| Deputy Clerk |